**Petrolino RAMOS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 89–216.

Supreme Court of Wyoming.

Feb. 15, 1991.

Rehearing Denied March 15, 1991.

Mike Cornia, Appellate Counsel for the Public Defender Program, for appellant.

Joseph B. Meyer, Atty. Gen., John Renneisen, Deputy Atty. Gen., and Mary B. Guthrie, Sr. Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

## OPINION

MACY, Justice.

Appellant Petrolino Ramos appeals from his conviction for second-degree murder.

We affirm.

Appellant raises the following issues:

1. Whether the trial court erred in excluding evidence that the victim had stabbed his brother-in-law.

2. Whether the trial court's refusal to give defendant's requested self-defense instructions denied Appellant of his right to due process as guaranteed by the Wyoming and United States Constitutions.

3. Whether the trial court erred in excluding evidence of a felony conviction of state's witness Gallegos.

4. Whether the admission of Appellant's statement made to the police especially after an unequiv[ocal] request for counsel, violated Appellant's rights under the Fifth Amendment of the United States Constitution and Article 1, Section 11 of the Wyoming Constitution.

5. Whether the trial court erred in not ruling on the motion to suppress.

6. Whether giving instruction number 18 indicating that second degree murder does not require proof [of] intent denied Appellant of his right to Due Process.

7. Whether the admission of evidence concerning Appellant's involvement in a fight the night of the killing was prejudicial error.

8. Whether the various error[s] in this case resulted in "Cumulative Error."

During the evening of January 28, 1989, several people gathered at Appellant's residence to listen to music, play pool, and

consume alcohol. Later in the evening, two individuals began to argue about the kind of music which should be played on the stereo. While the argument did not turn into a fisticuffs, it did lead to a quarrel between the victim and Appellant. After the two exchanged words, the victim decided to leave with three friends. Appellant attempted to follow the victim out of the house but was temporarily restrained at the doorway. When Appellant broke free and went outside, the victim, who was waiting to get into a car parked on the street in front of the house, removed and discarded his jacket. Appellant approached the victim and stabbed him in the chest with a knife. In the imbroglio which followed, Appellant stabbed the victim in the bicep and in the side of his chest below his armpit. Appellant fled the scene in a pickup with two friends and was apprehended by the police the next morning. The victim died from a stab wound to the heart.

Appellant was charged with aggravated assault and battery in violation of Wyo. Stat. § 6–2–502 (1977) and with first-degree murder in violation of Wyo.Stat. § 6–2–101(a) (1977), *amended by* 1989 Wyo.Sess.Laws ch. 171, § 1 (effective March 6, 1989). At the trial, the district court granted Appellant's motion for a judgment of acquittal on the aggravated assault and battery charge and on the premeditated portion of the first-degree murder charge. A jury found Appellant guilty of second-degree murder in violation of Wyo.Stat. § 6–2–104 (1977),[1] and the district court sentenced him to a term of not less than thirty-five years nor more than forty years in the Wyoming State Penitentiary.

### Evidence of the Victim's Prior Conduct

■ Appellant contends that the district court erred when it refused to allow his attorney to question a witness about the victim allegedly stabbing his brother-in-law. At the trial, the following colloquy occurred:

Q. Well, Martin[ ] had talked to you of stabbing his brother-in-law in Mexico three times, hadn't he?

A. Brother or brother-in-law?

Q. Either.

A. Which brother?

Q. I don't know which brother. He talked about that incident to you?

A. No.

The State objected to the questioning as being irrelevant, and the district court sustained the objection. Appellant argues that the question was proper under W.R.E. 404 and 405[2] and that the district court

---

1. Section 6–2–104 provides:

Whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life.

2. W.R.E. 404 states:

(a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of Accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) Character of Victim.—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) Character of Witness.—Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

W.R.E. 405 states:

(a) *Reputation or opinion.*—In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) *Specific instances of conduct.*—In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, or is in issue under Rule 404(a)(2), proof may also be made of specific instances of his conduct.

abused its discretion by sustaining the State's objection.

The decision to admit evidence is generally

"within the sound discretion of the trial court and absent a clear abuse of discretion will not be disturbed. It is also the general rule that the foundation, relevance, competency, materiality, and remoteness are within the sound discretion of the trial court and will be upheld on appeal absent a clear abuse of discretion." (Footnotes omitted.)

The burden of establishing the clear abuse of discretion must be assumed by the party who attacks the ruling of the trial court. That party must establish that the ruling of the trial court was erroneous and that it did affect substantial rights of the party.

*Jahnke v. State,* 682 P.2d 991, 1005 (Wyo. 1984) (quoting *Taylor v. State,* 642 P.2d 1294, 1295 (Wyo.1982)) (citations omitted). *See also Braley v. State,* 741 P.2d 1061 (Wyo.1987). Judicial discretion "means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986).

The district court's ruling sustaining the State's objection was not error. W.R.E. 602 provides that a witness may not testify about a matter unless the witness has personal knowledge of the matter.[3] After the witness stated that he had no knowledge of the stabbing incident, there was nothing further to ask him which was relevant to the incident.

### Appellant's Requested Self–Defense Instructions

■ Appellant's second contention challenges the district court's refusal to give Appellant's requested self-defense instructions. We recently discussed the standard of review we use when a defendant contends that the district court erroneously refused to give a proposed jury instruction.

*Oien v. State,* 797 P.2d 544 (Wyo.1990); *Thom v. State,* 792 P.2d 192 (Wyo.1990).

[A] defendant has the right to have instructions on his theory of the case or his theory of defense presented to the jury if the instructions sufficiently inform the jury of the theory or defense and if competent evidence exists which supports the law expressed in the instructions.

*Thom,* 792 P.2d at 195. The proposed instruction must articulate Wyoming law. *Oien,* 797 P.2d 544.

This Court has delineated the defense of self-defense in homicide cases:

In composite, they hold that to excuse a homicide on the grounds of self-defense, one must establish the following: (1) that the slayer was not at fault in bringing on the difficulty; (2) that he believed, at the time of the killing, that he was in such immediate danger of losing his own life, or of receiving serious bodily injury, as made it necessary to take the life of his assailant; (3) that the circumstances were such to warrant reasonable grounds for such belief in the mind of a reasonable man; (4) that there was no other reasonable method of escaping or otherwise resolving the conflict. The right to kill in self-defense exists only in extremity; there must be no other practicable means to avoid the threatened harm. To successfully assert self-defense, the defendant must have no other reasonable means of avoiding death or injury.

*Patterson v. State,* 682 P.2d 1049, 1053 (Wyo.1984) (citation omitted). In that first-degree murder case, the appellant and four other individuals, including the victim, were traveling in a van near Rawlins, Wyoming, when the victim placed a choke hold on the driver. The appellant pulled the victim off the driver and hit the victim's head on the console, knocking him unconscious. The driver eventually stopped the van, and the victim was stabbed. At the appellant's trial, the appellant claimed he was entitled to a self-defense instruction because he hit the victim's head on the console to prevent him from causing a serious automobile

---

3. That rule is subject to W.R.E. 703.

wreck. The district court refused to instruct the jury on the theory of self-defense, and the appellant was convicted of first-degree murder. This Court affirmed the conviction and stated that, even if the victim had not been stabbed, "the evidence surrounding the head-hitting incident [did] not give rise to the defense of self-defense." *Id.* at 1052.

The only evidence which appears to support Appellant's self-defense theory is his own testimony. Appellant testified that, as he began to follow the victim outside through the front door of the house, two individuals attempted to hold him back. Appellant stated that he struggled and broke free and that, when he went out through the front door, the victim charged him and reached out in an effort to grab his neck. Appellant further testified that he had always been afraid of the victim because the victim had tried to pick fights with him and that he feared the victim would beat him up and seriously hurt him. He also said that he had previously seen the victim with a knife, but Appellant admitted he had not seen the victim with a knife on the night of the stabbing.

In light of the standards enunciated in *Patterson,* and assuming Appellant's testimony is entirely true—which we must do under our standard of review, *Oien,* 797 P.2d 544—we hold that the victim's actions did not give rise to the defense of self-defense. The evidence simply does not indicate that Appellant could reasonably believe that he was in immediate danger of losing his life or of suffering serious bodily injury.

### Evidence of Prior Convictions

■ Appellant asserts that the district court erred by not allowing his counsel to question a witness for the State about a prior conviction.[4] During cross-examination of the witness, the following dialogue occurred:

Q. Have you ever been convicted of any felonies?

MR. CRANK: I will object, and ask Mr. Raymond for an offer of proof.

MR. RAYMOND: Don't need to have an offer of proof, she can say, no.

MR. CRANK: You have to have a reasonable basis to ask any question in a court of law, Your Honor.

THE COURT: I will sustain the objection.

MR. RAYMOND: Well, then let's do approach the Bench, if we could, Judge.

(The following proceedings were then had at the Bench outside the hearing of the Jury):

MR. RAYMOND: Just so the Court knows there is a reasonable basis for this, Randy Hansen knows this woman was in jail for pointing a gun at a police officer, whether that is reckless endangerment, I don't know, but that is what my inquiry was about, an assault.

Once again, we look to see if the district court abused its discretion. Because the district court has the prerogative to require the establishment of a foundation for the admissibility of evidence, *Jahnke,* 682 P.2d 991, and since Appellant did not offer any evidence showing that the witness had

---

4. W.R.E. 609 provides in pertinent part:

(a) *General rule.*—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one (1) year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

(b) *Time limit.*—Evidence of a conviction under this rule is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten (10) years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

been convicted of a felony, we hold that the district court did not abuse its discretion by sustaining the State's objection. At best, Appellant's counsel offered evidence demonstrating only that the witness had been arrested. W.R.E. 609 does not allow a witness' credibility to be attacked by evidence of prior arrests. *See Jackson v. Crews,* 873 F.2d 1105 (8th Cir.1989).

### Admissibility of Appellant's Statements to the Police

■ Appellant's fourth and fifth issues challenge the admissibility of two statements which he made to police officers. The first statement informed the police of the location of Appellant's knife. After Appellant was arrested and taken to have blood drawn, an officer told Appellant that the police were in the process of obtaining a search warrant so they could recover the knife Appellant used to stab the victim. Appellant responded by telling the officer where the knife was located. At the trial, the officer testified about Appellant's statement, and Appellant's counsel did not object. Appellant now claims that the statement was given involuntarily and that, therefore, his constitutional rights were violated.

The failure by Appellant's counsel to object at the trial to the admission of the statement triggers application of our plain error rule. W.R.Cr.P. 49(b); W.R.A.P. 7.05; W.R.E. 103(d); *Bradley v. State,* 635 P.2d 1161 (Wyo.1981); *Leeper v. State,* 589 P.2d 379 (Wyo.1979). Our determination of whether plain error exists is subject to the following three-part test:

First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced.

*Bradley,* 635 P.2d at 1164.

Regardless of whether Appellant has met his burden under the first two prongs of the plain error test, he has failed to demonstrate that he was materially prejudiced by admission of the statement. Since Appellant has never disputed the fact that he stabbed the victim, his statement informing the police of the location of the knife was not incriminating.

■ The second statement which Appellant claims was given involuntarily was made at the police station after Appellant had been informed of his constitutional rights and after he had requested the advice of counsel. At the trial, an officer disclosed what Appellant said during the following colloquy:

Q. Were you present when he was arrested?

A. Yes.

Q. Where was he taken after his arrest?

A. He was taken to the Casper Police Department.

Q. When he was at the Casper Police Department did you ever advise him of what he was charged with?

A. Yes, I did.

Q. What did you tell him at that time, Mr. Anderson?

A. I explained to him that Martin had died, and Mr. Ramos remarked, ["]I knew he did.["] I then explained—

MR. RAYMOND: I am going to lodge an objection anyway until something is shown that there was the Miranda warning or something, voluntariness, it is not admissible before this Jury.

THE COURT: I will overrule the objection. You can answer the question.

[A]. I then again explained to him that he would be charged with first degree, premeditated murder, and Father Velasquez was interpreting at the time, but Mr. Ramos started speaking in English to me.

Q. Let me back up a little bit, I am not sure the Ladies and Gentlemen of the Jury heard you the first time. What was the first thing that you said in your testimony here today that you said to Mr. Ramos?

A. I told him that Martin had died.

Q. Did he make any comment?

A. Yes.

Q. What did he say?

A. He stated that [he] knew he died.

Q. Did you explain to him then what he was charged with?

A. Yes.

Q. What did you tell him in that regard?

A. Told him he would be charged with first degree, premeditated murder.

Q. Were you asking him any questions at this time?

A. No, I was telling him what was going on.

Q. Did you explain to him what that meant?

A. Father V[e]lasquez was interpreting and explaining the terminology.

[Q]. What was told to him about what that meant?

A. That premeditated meant that he had time to think about what he was doing, and Mr. Ramos replied to that.

Q. What did Mr. Ramos reply and in English or Spanish?

A. He spoke in English.

Q. What did he say?

A. He stated he had come out of the house, and he was going to fight Martin and that Martin hit him as he came out of the house, and that his hands were in his pockets, Mr. Ramos stated that his hand in his pocket came out of his pocket, and he had a knife in his hand, and he stabbed Martin by reflex.

Q. Did you ask him—excuse me.

A. And that Martin also struck him a second time, and I stopped him there.

Q. Did you ever ask him any questions during this time period?

A. No, I did not.

 Under the fifth amendment to the United States Constitution and article 1, section 11 of the Wyoming Constitution, an individual cannot be compelled to testify against himself in any criminal case. An accused taken into custody must be informed of this right and of his right to have counsel. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966); *Dryden v. State,* 535 P.2d 483 (Wyo.1975). Once the individual requests to be represented by counsel, the police must cease any interrogation until the accused is represented by counsel or until he waives his constitutional rights. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Best v. State,* 736 P.2d 739 (Wyo.1987). Interrogation is defined as a "measure of compulsion above and beyond that inherent in custody itself." *Griffin v. State,* 749 P.2d 246, 253 (Wyo.1988). *See also Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). In *Innis,* the United States Supreme Court stated that interrogation included "words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Innis,* 446 U.S. at 302, 100 S.Ct. at 1690 (emphasis in original) (referred to as the "functional equivalent" of interrogation). "A statement that is not the product of interrogation or compulsion attributable to authorities or some other improper action, is voluntary and admissible." *Griffin,* 749 P.2d at 254.

Contrary to Appellant's contentions, his statement that he went outside to fight the victim and then stabbed the victim by reflex was admissible because it was not the product of an interrogation. The record does not reveal any compulsion on the part of the police or any words or actions which they should have known would elicit an incriminating statement. The police officer was merely informing Appellant of the charges against him when Appellant made the statement.

Motion to Suppress

 Appellant asserts that the district court erred by failing to hold a suppression hearing to determine the voluntariness of his statements. Before his trial, Appellant made a motion to suppress the statements he made to the police, but the district court did not rule on the motion. Instead, during the trial, the district court overruled Appellant's objection to the admission of the statements. Our case law dictates that a defendant has a constitu-

tional right to a reliable determination "on the issue of voluntariness in front of the judge alone before the statements may be received in evidence at the trial for jury consideration." *Dodge v. State*, 562 P.2d 303, 308 (Wyo.1977). *See also Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); and *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964) (such suppression hearings are sometimes referred to as *Jackson–Denno* hearings, *Smith v. Zant*, 887 F.2d 1407 (11th Cir.1989)). We have also held that the judge should issue an express finding of voluntariness before the jury is allowed to hear the defendant's statements. *Frias v. State*, 722 P.2d 135 (Wyo.1986). That rule is subject to exception when the voluntariness appears in the record with unmistakable clarity or is not in serious dispute. *Id.; Dodge*, 562 P.2d 303.

 We hold that, while the district court erred by failing to conduct a *Jackson–Denno* hearing, the error was harmless constitutional error under *Campbell v. State*, 589 P.2d 358 (Wyo.1979), and *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967). A constitutional error is harmless only if the court can determine that it was harmless beyond a reasonable doubt. *Chapman*, 386 U.S. 18, 87 S.Ct. 824. In this case, the district court's omission was harmless because the purpose of the *Jackson–Denno* hearing was fulfilled. The purpose of a *Jackson–Denno* hearing is to determine whether the defendant's statements were voluntary. *Lego*, 404 U.S. 477, 92 S.Ct. 619. The record shows that Appellant's statements were not the result of police interrogation and, therefore, were voluntary. Hence, we hold that the district court's failure to hold a *Jackson–Denno* hearing was harmless beyond a reasonable doubt and that, under the facts of this case, the judge was not required to make an express finding of voluntariness.

### Instruction No. 18

 The district court gave the following three instructions to the jury:

### INSTRUCTION NO. 6

The necessary elements of the crime of murder in the second degree are:

1. The crime occurred within the County of Natrona on or about the date of January 29, 1989; and

2. The Defendant killed a human being; and

3. The Defendant acted purposely; and

4. With malice.

If you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

If, on the other hand, you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

### INSTRUCTION NO. 7

"Purposely" means that the act was done intentionally or deliberately, and not accidentally.

### INSTRUCTION NO. 18

To prove the crime of Second–Degree Murder or Manslaughter, it is not necessary to establish a deliberate intent to kill or any other specific intent on the part of the Defendant.

Appellant did not object at the trial to the instructions, but he now contends that they are inconsistent in that Instruction No. 6 requires proof of a deliberate intent and Instruction No. 18 states that proof of a deliberate intent is not necessary. Appellant asserts that such an inconsistency gives rise to plain error. We disagree.

Instruction No. 6 properly sets out the elements of second-degree murder as they are prescribed in § 6–2–104. That statute requires proof that the accused *purposely committed an act* which caused the death of a human being. Instruction No. 18 explains that the jury does not have to conclude that Appellant *deliberately intended*

*to kill* in order to convict him of second-degree murder. The difference is the distinction between general intent and specific intent. *See Crozier v. State*, 723 P.2d 42 (Wyo.1986) (thoroughly discussing the distinction between general intent and specific intent). Because second-degree murder is a general intent crime, a conviction for second-degree murder must be supported by evidence that the defendant acted with deliberation, but it does not require evidence that he deliberately killed. *Id.*

### Appellant's Prior Conduct

■ Before the trial, the district court granted Appellant's motion in limine preventing the State from inquiring about Appellant's involvement in an altercation at the G.I. Forum approximately three hours prior to the stabbing. The district court stated that evidence of the altercation "sounds like the sort of thing that might be admissible on rebuttal more than on the case in chief," and granted the motion "as far as the case in chief." At the trial, Appellant testified on direct examination that, on the night of the stabbing, he went home at about seven o'clock and that he stayed there all night. On cross-examination, Appellant admitted that he did not stay home all night, and the State asked him if he went to the G.I. Forum. Appellant's counsel objected and claimed that the question violated the court's order in limine. The district court overruled the objection, and the State went on to question Appellant about his involvement in a fight at the G.I. Forum.

■ We begin by noting that, while Appellant's counsel objected to the State's question which sought to elicit the fact that Appellant had gone to the G.I. Forum on the night of the stabbing, he did not object to the State's questions concerning Appellant's fight at the G.I. Forum. Therefore, any assignment of error which Appellant bases upon the admission of evidence of his fight at the G.I. Forum must be examined under our abuse of discretion standard, *Jahnke*, 682 P.2d 991, and our plain error doctrine. *Bradley*, 635 P.2d 1161.

Appellant's contention satisfies the first prong of the test for plain error because the testimony about which Appellant is concerned is found in the record. Appellant's challenge fails, however, to pass the second portion of the test for plain error, which requires that the party claiming plain error must establish that "a clear and unequivocal rule of law was violated." *Id.* at 1164.

To begin with, the decision to allow the admission of evidence is within the purview of the district court's discretion. *Jahnke*, 682 P.2d 991. Second, this Court has used the same transaction rule under W.R.E. 404(b). *Crozier*, 723 P.2d 42. In *Crozier*, we stated that "evidence of other criminal activity is admissible if it 'forms part of the history of the event or serves to enhance the natural development of the facts.'" *Id.* at 49 (quoting *Commonwealth v. Evans*, 343 Pa.Super. 118, 494 A.2d 383, 390 (1985)). We also stated that such evidence was not admissible if it resulted in "inordinate prejudice without reciprocal probative justification." *Id.* at 50. Given Appellant's testimony that he was not the aggressor during the stabbing incident and our deference to the district court in matters of admissibility, we cannot say that a clear and unequivocal rule of law was violated when the jury heard testimony about Appellant's fight at the G.I. Forum.

### Cumulative Error

Appellant contends that the cumulation of errors which occurred during his trial denied him the right to a fair trial. The only error was the district court's failure to hold a *Jackson–Denno* hearing, and that error was harmless. Appellant has failed to establish that various errors cumulated.

Affirmed.

GOLDEN, J., files a specially concurring opinion.

URBIGKIT, C.J., files a dissenting opinion.

### GOLDEN, Justice, specially concurring.

I concur in the majority opinion except for that portion dealing with the admissibility of Mr. Ramos' statement to investigator

Anderson in the presence of Father Velasquez, a Catholic priest. As to that portion, I specially concur. I am inclined to conclude that the combination of Anderson's telling Ramos that he was going to be charged with first degree murder and that the element of premeditation meant Ramos had time to think about what he was going to do to the victim, together with the presence of the Catholic priest, constituted "interrogation" in the broad context defined in *Innis*. Further, I am inclined to conclude that Anderson should have known that his "interrogation" of Ramos was reasonably likely to elicit a response from Ramos. Therefore, Ramos' fifth amendment protection was violated. Finally, after reviewing the totality of the other admissible evidence, I have concluded that this constitutional error is harmless beyond a reasonable doubt. *Campbell v. State*, 589 P.2d 358 (Wyo.1979).

URBIGKIT, Chief Justice, dissenting.

I concur with Justice Golden in his special concurrence that error existed in the admission of the statement of the accused in the presence of the priest under these circumstances, but not to explicate as harmless. I will further dissent because I believe the majority opinion permits the trial judge to supersede a fact-finding function of the jury. The majority claims a self-defense instruction was not warranted under *Oien v. State*, 797 P.2d 544 (Wyo. 1990) and *Thom v. State*, 792 P.2d 192 (Wyo.1990) because it was unreasonable for appellant to have believed he was in immediate danger of suffering serious bodily injury. The reasonableness of such belief is a crucial element of self-defense under *Patterson v. State*, 682 P.2d 1049, 1053 (Wyo.1984). The question of reasonableness belongs to the jury, not to this court.

The majority relies on *Patterson*, 682 P.2d at 1053 for the proposition that appellant was not entitled to have the jury instructed on his theory of self-defense. Such reliance appears misplaced. The *Patterson* defendant was charged with first degree murder for slashing the victim's throat. The trial court refused Patterson's request for a self-defense instruction be-

cause it related, not to the throat slashing, but to an earlier incident in which the victim's head was slightly injured. *Id.* at 1052 n. 1.

The standard of review for this appeal is controlled by constitutional concepts considered in *Oien*, 797 P.2d 544 and *Thom*, 792 P.2d 192. Unfortunately, the majority does not apply that standard for this decision. Under *Oien* and *Thom*, a defendant has the right to have the jury informed of his or her theory of defense if the instruction sufficiently informs the jury of that theory, if competent evidence supports the law, and the proposed instruction articulates Wyoming law.

Under *Oien* and *Thom*, testimony by a defendant qualifies as competent evidence. Because appellant testified as he did, the trial judge should have given the jury a *Patterson* instruction on the elements of self-defense. The jury, rather than the trial court or this court, could then have determined if the circumstances warranted reasonable grounds for appellant to fear serious bodily injury and if an acquittal was warranted under *Patterson*.

Under the *Oien* and *Thom* standard, the majority assumes the testimony by appellant to be true. Appellant testified that his brother-in-law told him to go outside if he wanted to fight him and that his brother-in-law insisted on him going outside. He also testified that his brother-in-law threw down his jacket and charged him, trying to reach for his neck. He said he thought that if he took out his knife, the victim would not get near him and that the stabbing was inadvertent. The majority says that evidence, even if true, does not indicate that appellant could reasonably believe he was in immediate danger of suffering serious bodily injury. Such an inference is not permitted under *Oien* or *Thom*. Such an inference is one of the jury to make, not an appellate court.

These right to instruction on theory of defense cases, *see* 4 C. Torcia, Wharton's Criminal Procedure § 538 (12th ed. 1976), have a dual constitutional constituent. First presented is the right of due process,

Wyo. Const. art. 1, § 6; *Best v. State,* 736 P.2d 739 (Wyo.1987); *Blakely v. State,* 474 P.2d 127 (Wyo.1970); and the second is the right to have the jury perform the fact-finding function of guilt determination, Wyo. Const. art. 1, § 9.

Illustrative and definitive within the history of a right to a theory of defense/self-defense instruction is the foundational case which is factually similar. *Stevenson v. United States,* 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896). In *Stevenson,* there was a homicide involving a Deputy United States Marshall in the Indian Territory. The only factual difference from the general circumstance of that case was in the trial. The theory of defense was the alternative of manslaughter to capital murder which occurred within the factual context of a continued fracas between the decedent and the defendant.

The United States Supreme Court identified the theory of defense inquiry by the consideration and question:

> The jury should have been permitted to determine the credibility of the evidence, as above detailed, and, if true, whether the effect of the conduct of the deceased in shooting, as he did, into the saloon, and considering all the circumstances of the case, was such as naturally tended to and did excite in the mind of the plaintiff in error a sudden passion, either of rage or fear, and under the influence of which he fired the shot and killed the deceased wilfully and unlawfully, but at the same time without malice. If he thus fired the pistol, would not a jury have the right to say that the consequent killing was manslaughter instead of murder? Is it not clearly a question of fact for a jury to determine just what the mental condition of plaintiff in error was in regard to malice?

*Id.* at 320, 16 S.Ct. at 841. The right to a theory of defense instruction was restated as a controlling principle most recently by Chief Justice Rehnquist in *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) in citing *Stevenson* as his authority in the case.

I would paraphrase *Stevenson,* 162 U.S. at 321–22, 16 S.Ct. at 842 (emphasis in original) only slightly for application to this case:

> The ruling of the trial judge in effect was to say that as matter of law there was nothing in all this evidence, if true, which would permit the jury to find that the [accused could reasonably believe that he was in imminent danger of losing his life or suffering serious bodily injury]. Is it perfectly plain and clear, *as a conclusion of law,* that [decedent's activities] such as were detailed by some of the witnesses in this case can have no tendency to raise within the mind of the person thus assaulted [a question of the imminence of danger and physical harm]? If it is not to be so asserted as matter of law, then it becomes a question of fact in such case, and that question must be answered by the jury. Whether the witnesses told the truth in regard to such circumstances is not for the court to say, nor is it for the court to decide upon the weight to be given to them if proper for the consideration of the jury.

The significant volume of Wyoming case law should give us constitutional caution where in result we weigh the evidence to foreclose a jury fact-finding function. If the evidence is slight, the jury as well as the judge is competent and responsible. In addition to our very recent cases of *Oien* and *Thom,* see also the historical progression in *State v. Hickenbottom,* 63 Wyo. 41, 178 P.2d 119 (1947); *Blakely,* 474 P.2d 127; *Thomas v. State,* 562 P.2d 1287 (1977), *reversed on other grounds sub nom. Nowack v. State,* 774 P.2d 561 (Wyo.1989); *Goodman v. State,* 573 P.2d 400 (Wyo. 1977); and *Sanchez v. State,* 694 P.2d 726 (Wyo.1985). *See also Best,* 736 P.2d 739; *Naugher v. State,* 685 P.2d 37 (Wyo.1984); *Patterson,* 682 P.2d 1049; *Scheikofsky v. State,* 636 P.2d 1107 (Wyo.1981); and *Benson v. State,* 571 P.2d 595 (Wyo.1977).

We become fact finders who change the rules of review as well as denigrate due process and right to a jury trial by this decision. It may well be, and may even likely be, that the jury would take little stock of this explanation as a defense

against criminal conviction responsibility for the conduct of this accused. Decision, however, should be made by the jury and not by the court that the jury is unable or incompetent to make the decision. There is evidence, if the appellant is to be believed, which would support his claim that he acted in self-defense and the baton should be passed to the State to shoulder its burden of the proof for homicide conviction. *Dykes v. State*, 319 Md. 206, 571 A.2d 1251, 1257 (1990).

The problems that this appellant had with trial error did not end or start with his inability to submit his theory of defense to the jury for consideration. In concurring with Justice Golden in his special concurrence that clear error existed in the admissibility of the statement to the investigator, I can by no means accept the further conclusion that it was harmless beyond a reasonable doubt, as would be required under the circumstances, to avoid reversible error. *Campbell v. State*, 589 P.2d 358 (Wyo.1979). We are presented with a simple, direct and specific occurrence where a police officer interrogated appellant after he had requested the assistance of counsel. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, *reh'g denied* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981); *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, *reh'g denied* 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966).

The United States Supreme Court, most recently in *Minnick v. Mississippi*, —— U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), recognized constitutional error when interrogation occurred after counsel had been requested and it is apparent that the intentional interrogation here for later trial testimony by the police officer was anything but harmless under the criteria of both our case law and that developed by the United States Supreme Court. *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh'g denied* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). Additionally, I again question whether intentional interrogation by a police officer knowing that the individual had asked for assistance of counsel can consti-tute harmless error if the elicited testimony has a meaningful inculpatory effect for the jury resolution of guilt. To say that obvious interrogation which is asking questions to obtain guilt suggestive answers is not interrogation solves no problems within our responsibility to assure constitutional rights to those persons accused of criminal offenses. *Minnick*, 111 S.Ct. 486.

Furthermore, since this was clear and overt interrogation, the *Denno* hearing should have been provided. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Failure of the trial court to provide a *Denno* hearing when a motion to suppress an alleged confession is presented becomes an open invitation for trial error and future reversal upon appeal. Juries are not so unobservant as maybe sometimes assumed. Forcing the defendant to conduct the suppression hearing as a trial recess activity re-emphasizes for the jury whatever the significance of the statements may have been when testimony resumes. Obviously, the jury recognizes in most cases that objection was taken and subsequent rejection by the trial court following the recess time required for the hearing psychologically provides additional emphasis to the validity of the testimony when then presented upon reconvened trial.

I would suggest to the trial bench and lawyers of defense and prosecution that failure to arrange for a *Denno* hearing on something as serious as a suppression matter prior to trial may frequently if not usually cause a violation of the rights of the defendant to constitutional due process. In this case, the motion was properly made before trial in accord with the Wyoming Rules of Criminal Procedure and appellant should have received a hearing and decision before trial commenced. The fairness required for due process as directed to the *Denno* hearing is equally applicable to prosecution or defense or strategy planning and evidentiary presentation.

The problem is conversely reflected for this case in a further claimed error where a motion in limine was actually granted regarding conduct prior to trial and then inquiry was permitted by cross-examination

in contravention of the previously granted motion in limine. The justification for accepting the trial court's reversal of prior decision might more properly be found as derived from an obvious untrue answer by appellant on direct examination, but certainly not as a subject of rejected plain error or applied alternative of unlimited discretion of the trial court. On this issue, where an answer of legal reason might be provided for appeal justification of non-reversal, this court provides the wrong reason which lacks both philosophical and adjudicative validity. *See Shields v. Carnahan,* 744 P.2d 1115 (Wyo.1987).

Based principally, although not entirely, on the failure to provide a right to appellant to have his instruction on the theory of defense, I would reverse and remand for retrial.